1  WILLIAM C. KERSTEN, SBN 140524
   KERSTEN & ASSOCIATES
2  38 Corporate Park
   Irvine, California 92606-5105
3  Telephone: (949) 222-0033
   Facsimile: (949) 222-0044
4
   Attorney for Plaintiff Bang Huynh

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BANG HUYNH,<br><br>    *Plaintiff*,<br><br> -vs-<br><br><br>T-MOBILE USA, INC., a Delaware corporation; and Does 1 to 10,<br><br>    *Defendants.* | CASE NO.:<br><br>**BANG HUYNH'S COMPLAINT FOR DAMAGES:**<br><br>1. **Breach of Contract;**<br>2. **Violations of the FCA;**<br>3. **Violations of the Computer Fraud and Abuse Act;**<br>4. **Negligence;**<br>5. **Negligent Hiring, Retention, and Supervision; and**<br>6. **California Consumer Privacy Act** |

  Plaintiff BANG HUYNH ("Plaintiff") complains against Defendant T-Mobile USA, Inc., a Delaware corporation, and for causes of action against Defendants, and each of them, alleges as follows:

**PARTIES**

  1. Plaintiff is a California resident residing in Los Angeles County.

  2. Defendant T-MOBILE USA, INC. ("T-Mobile") is a Delaware corporation doing business in Los Angeles County, California with a principal place of business in the state of Washington.

3. Plaintiff is ignorant of the true names and capacities of Defendants sued in this complaint as DOES 1 through 10, inclusive, and therefore sues these Defendants by these fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by such Defendants.

4. Plaintiff is informed and believes, and thereon alleges, that at all times material hereto Defendants, and each of them, were the agents and employees of their Co-Defendants, and in doing the things herein mentioned were acting in the course and scope of their authority as such agents and employees, and with the permission and consent of their Co-Defendants, and each of them.

5. Whenever and wherever reference is made in this Complaint to any act or failure to act by a Defendant or Defendants, such allegation and references shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly and severally.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because this case arises under federal question jurisdiction under the Federal Communications Act ("FCA"). The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims because the claims are derived from a common nucleus of operative facts. The Court also has jurisdiction over this action pursuant o 28 U.S.C. § 1332 because Plaintiff is a citizen of a different state than T-Mobile.

7. This Court has personal jurisdiction over this matter under 18 U.S.C § 1030(g) as this case arises under the Court's federal question jurisdiction and monetary threshold requirements pursuant to the Computer Fraud and Abuse Act ("CFAA").

8. Further, the Court has jurisdiction under 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000 and Plaintiff and Defendant are citizens of

different states. Plaintiff is a resident of the state of California, and Defendant is a Delaware corporation with a principal place of business in the state of Washington.

9. Venue is proper in this Court under 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to this complaint occurred in this District.

## GENERAL ALLEGATIONS

10. Plaintiff has been a customer of T-Mobile since 2015. On March 14, 2020, Plaintiffs T-Mobile cellular telephone was no longer operable and had no signal. Plaintiff contacted T-Mobile and was told that his subscriber identity module ("SIM card") had been taken over. Plaintiff accessed his T-Mobile account online and found that there was a text to Coinbase regarding his cryptocurrency account. Plaintiff contacted Coinbase and was informed that his account had been compromised and that 8.36064012 in Bitcoins and .3399745 in Bitcoin Cash (collectively "Bitcoin") had been converted from his account and his Coinbase digital wallet had been emptied.

11. This action arises out of T-Mobile's systemic and repeated failures to protect and safeguard its customers' highly sensitive personal and financial information against common, widely reported, and foreseeable attempts to illegally obtain such information.

12. As a result of T-Mobile's negligence in failing to protect customer information, including negligently hiring and supervising of customer support personnel and its violations of Federal laws designed to protect wireless service customers, Plaintiff lost $412,000 in cryptocurrency due to an account takeover scheme ("SIM-swapping"), which could not have occurred but for T-Mobile's negligent practices and its repeated failure to adhere to federal and state law.

13. T-Mobile is one of the nation's largest wireless carriers, and is governed by numerous federal statutes, including the Federal Communications Act (FCA). T-Mobile regularly holds itself out as a secure custodian of customer data, including customer financial and personal information. T-Mobile maintains that it uses a variety of administrative, technical, procedural, contractual, and physical

security measures to protect customer data against accidental, unlawful, or unauthorized destruction, loss, altercation, access, disclosure, or use while it is under T-Mobile's control.

14. T-Mobile is aware of SIM-swapping and other forms of account takeover fraud, having dealt with such instances with its customers, having been widely reported in the press and by government regulators, including the Federal Trade Commission ("FTC") and the Federal Communications Commission ("FCC").

15. SIM-swapping occurs whereby a third-party convinces a wireless carrier such as T-Mobile to transfer access to one of its legitimate customer's cellular telephone numbers from the legitimate customer's registered SIM-card, which is a small portable chip that houses identification information connecting an account to the wireless carrier's network, to the SIM-card controlled by the third party. The wireless carrier must effectuate the SIM card reassignment and, therefore, "SIM-swapping" is not an isolated act, as it requires the wireless carrier's active involvement to swap the SIM containing information regarding its customer to an unauthorized person's phone.

16. T-Mobile, by directly or indirectly exceeding the authorized access to customer accounts, is liable under the Computer Fraud and Abuse Act ("CFAA"). SIM-swaps are ultimately actualized by the wireless carrier itself.

17. As a regulated wireless carrier, T-Mobile has a duty to protect the security and privacy of its customer's personal and financial information, referred to as Customer Proprietary Network Information ("CPNI").

18. On or about March 13, 2020, Plaintiff suffered a SIM-swap attack when third parties were able to access and hijack his SIM date from T-Mobile, providing full access to Plaintiff's CPNI and allowing third parties to impersonate Plaintiff in online forums and applications.

19. T-Mobile allowed third parties unauthorized access to Plaintiff's SIM data in violation of Federal law. Plaintiff is a customer of Coinbase which held

Plaintiff's Bitcoin.  The transactions were coordinated through Coinbase's mobile application.

20.  After securing access to Plaintiff's data from T-Mobile, the hackers compromised Plaintiff's Coinbase account and converted his Bitcoin.

21.  T-Mobile failed in its duty to safeguard Plaintiff's personal and financial information by providing unauthorized access to Plaintiff's CPNI.  Upon information and belief, T-Mobile failed to implement and maintain security policies and procedures sufficient to protect the unauthorized access to Plaintiff's CPNI.

22.  Upon information and belief, T-Mobile failed to properly train and supervise its employees to prevent the unauthorized access to Plaintiff's CPNI.

23.  Upon information and belief, T-Mobile could have reasonably foreseen the consequences of failing in its duty to implement, maintain, and execute sufficient security policies and practices the unauthorized access to customer data, including Plaintiff.

24.  Upon information and belief, T-Mobile's systems, policies and procedures allow its officers, agents, and employees to exceed the authorized access to its customer accounts without justification in violation of the CFAA.  T-Mobile's actions and inaction demonstrate a reckless disregard for the rights of its customers.  But for T-Mobile's actions and inaction, Plaintiff would not have been damaged.  Plaintiff has been damaged in a sum according to proof.

25.  T-Mobile markets and sells wireless cellular service through standardized wireless service plans.  T-Mobile maintains accounts for its wireless customers, enabling them to access information about the services they purchase from T-Mobile.

26.  It is widely recognized that the mishandling of customer wireless accounts, including but not limited to allowing unauthorized access, can facilitate identity theft and related harm.

27.  T-Mobile's Privacy Policy states, in pertinent part: "We use a variety of administrative, technical, and physical security measures designed to protect your

personal date against accidental, unlawful, or unauthorized destruction, loss, alteration, access, disclosure, or use while it is under our control. We maintain authentication procedures when you contact us by phone or in retail locations to help ensure that access is provided only to the primary account holder or authorized users of the account. Online access to your personal data is protected through passwords and other safeguards."

28. T-Mobile's sales and marketing materials state: "We have implemented various policies and measures to ensure that our interactions are with you or those you authorize to interact with us on your behalf – and not with others pretending to be you or claiming a right to access your information."

29. T-Mobile's sales and marketing materials also state that, unless T-Mobile can verify the caller's identity through certain personal information or a PIN requested by the customer, T-Mobile's policy is not to release any account specific information.

30. Despite these statements, rules and promises, T-Mobile failed to provide reasonable and appropriate security to prevent unauthorized access to customer accounts.

31. Under the inadequate procedures implemented by T-Mobile, unauthorized persons, including T-Mobile's own officers, agents, and employees, acting without customer permission, can authenticate, access, and make changes to customer information.

32. Plaintiff entered into a contract with T-Mobile for wireless cellular service. On or about March 13, 2020, T-Mobile allowed an unauthorized person to access Plaintiff's T-Mobile account. The unauthorized person was then able to gain access to Plaintiff's phone-based applications, including Coinbase. The unauthorized person was able to impersonate Plaintiff and engage in transactions with third parties.

33. T-Mobile by its inadequate procedures, practices, and regulations, engages in practices which fail to provide reasonable, appropriate, and sufficient security to prevent unauthorized access to its customers' wireless accounts,

allowing unauthorized persons to be authenticated, and granting access to sensitive customer account information.

34. T-Mobile failed to establish and implement reasonable policies, procedures, and safeguards governing the creation, access, and authentication of user credentials to access customer accounts, creating an unreasonable risk of unauthorized access.

35. T-Mobile failed to establish and enforce rules and procedures sufficient to ensure only authorized persons have access to T-Mobile customer accounts. T-Mobile failed to establish appropriate rules, policies, and procedures for the supervision and control of its officers, agents, and employees. T-Mobile failed to establish and enforce rules and procedures, or provide adequate supervision or training sufficient to ensure that its employees and agents follow such rules and procedures, to restrict access to unauthorized persons. T-Mobile failed to implement and maintain internal controls to protect against account takeovers and SIM swapping by unauthorized persons.

36. Due to the inadequate security measures, policies, and safeguards employed by T-Mobile, it created an unreasonable risk of unauthorized access to the accounts of its customers, including Plaintiff.

37. T-Mobile's operations must comply with federal and state statutes, including, but not limited to, the FCA. 47 U.S.C. § 222. The FCC has promulgated rules to implement Section 222 of the FCA "to ensure that telecommunications carriers establish effective safeguards to protect against unauthorized use or disclosure of CPNI." 1998 CPNI Order, 13 FCC Rcd. At 8195 ¶ 193; 47 C.F.R. § 64.2001 et seq. ("CPNI Rules"). The CPNI Rules also require carriers to implement safeguards to protect customers' CPNI. 47 C.F.R. § 64.2009(b), and (e). These safeguards include training personnel, establishing supervisory review and implementing measures to prevent the disclosure of CPNI to unauthorized individuals.

## First Cause of Action
### (Breach of Contract)

38. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 to 37 as if fully set forth herein.

39. Plaintiff and T-Mobile entered into a written Agreement regarding providing Plaintiff with cellular service.

40. Plaintiff at all time performed the terms of the Agreement.

41. Plaintiff is informed and believes that T-Mobile breached the Agreement by failing to safeguard Plaintiff's account and personal information, resulting in the SIM swap and the loss of $412,000 in Bitcoin.

42. By reason of the aforementioned breaches by T-Mobile, and as a direct and foreseeable consequence thereof, Plaintiff has been damaged in amount in excess of the jurisdiction of this Court, according to proof at the time of trial herein.

## Second Cause of Action
### (Violations of the Federal Communications Act)

43. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 to 42 as if fully set forth herein.

44. The FCA regulates interstate telecommunications carriers, including T-Mobile.

45. T-Mobile is a "common carrier" engaged in interstate commerce for the purpose of furnishing communications services with the meaning of Section 201(a) of the FCA. As a common carrier, T-Mobile is subject to sections 201 through 222 of the FCA.

46. Under section 201(b) of the FCA, common carriers may implement only those practices, classifications, and regulations that are "just and reasonable". Section 206 provides that in case any common carrier shall do, or cause or permit to be done, any act, matter of thing in his chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby

for the full amount of damages sustained in consequences of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

47. T-Mobile's conduct constitutes a violation of section 201(b) of the FCA. T-Mobile is also liable for the acts, omissions, and/or failures, as alleged herein, of any of its officers, employees, agents, or any other person acting on behalf of T-Mobile.

48. Section 222 of the FCA requires telecommunications carriers, including T-Mobile, to "protect the confidentiality of proprietary information" of customers. T-Mobile violated its duty under Section 222 of the FCA by failing to protect the confidentiality of the proprietary information of Plaintiff by using, disclosing, or permitting access to Plaintiff's CPNI without the consent, notice, and/or legal authorization of Plaintiff as required by the FCA.

49. T-Mobile's violation under Section 222 allowed unauthorized parties to impersonate Plaintiff in transactions with the other parties. T-Mobile violated Section 222 by allowing an unauthorized party to access Plaintiff's CPNI, resulting in theft by that party or others associated with that party of Bitcoin with a value of $412,000.

50. T-Mobile's conduct as alleged herein constitutes a knowing violation of Section 222 of the FCA. As a direct consequence of T-Mobile's violations of the FCA, Plaintiff has been damaged in a sum according to proof at trail, as well as reasonable attorney fees and costs.

### Third Cause of Action
### (Violations of the Computer Fraud and Abuse Act)

51. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 to 50 as if fully set forth herein.

52. The CFAA governs those who intentionally access computers without authorization or who intentionally exceed authorized access and, as a result of such conduct, cause damage and loss. 18 U.S.C. § 1030.

53. As alleged herein, a SIM-swap attack requires the intentional access to customer computer data by T-Mobile which exceeds its authority, and which conduct causes damage and loss. As such, T-Mobile is subject to the provisions of the CFAA. T-Mobile's conduct constitutes a knowing violation of the CFAA As set forth in the CFAA, exceeding authorized access means to access a computer with authorization and then to use such access to obtain or alter information that the accessor is not entitled to obtain or alter.

54. T-Mobile is also liable for the acts, omissions, and failures of its officers, employees, and agents acting on behalf of T-Mobile. T-Mobile violated its duty under the CFAA by exceeding its authority to access the computer data and breach the confidentiality of the proprietary information of Plaintiff by using, disclosing, or permitting access to Plaintiff's CPNI without the consent, notice or legal authorization of Plaintiff as required by the CFAA.

55. Plaintiff has suffered damages in excess of the $5,000 threshold required by the CFAA. Upon information and belief, T-Mobile's conduct constitutes a reckless violation of the CFAA.

56. As a direct consequence of T-Mobile's violations of the CFAA, Plaintiff has been damaged in an amount according to proof at trial, as well as his reasonable attorney fees and costs.

### Fourth Cause of Action
**(Negligence)**

57. Plaintiff incorporates herein by reference the claims and allegations set forth in paragraphs 1 to 57 as fully set forth herein.

58. T-Mobile owes a duty of care to its customers to ensure the privacy and confidentiality of CPNI during its provision of wireless carrier services, as required by both federal and state law.

59. T-Mobile owes a duty of care to foreseeable victims who transact business with legitimate T-Mobile customers or those who they believe to be legitimate T-Mobile customers.

60. By allowing unauthorized access to the personal and confidential information of T-Mobile customers, T-Mobile breached its duty of care to its customers and to foreseeable victims, including Plaintiff.

61. But for the inadequate security protocols, practices, and procedures employed by T-Mobile in protecting customer data, including Plaintiffs private and confidential information, Plaintiff would not have suffered damage.

62. Plaintiff has been damages in an amount equal to Bitcoin Cash with a value of $412,000.

## Fifth Cause of Action
### (Negligent Hiring, Retention, and Supervision)

63. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 to 62 as if fully set forth herein.

64. At all times herein, T-Mobile's agents, officers, and employees, including those directly and indirectly responsible for or involved in allowing unauthorized access to Plaintiff's confidential information and proprietary account information, were under T-Mobile's direct supervision and control.

65. Upon information and belief, T-Mobile negligently hired, retained, controlled, trained, and supervised the officers, agents, and employees under its control, and knew or should have known that such officers, agents, and employees could allow unauthorized access to customer accounts, including that of Plaintiff.

66. Upon information and belief, T-Mobile's negligent hiring, retention, control, training, and supervision allowed the unauthorized access to customer accounts resulting in damage to T-Mobile customers and foreseeable victims in the public at large, including Plaintiff.

67. Given T-Mobile's experience with account takeover and SIM-swap attacks, many of them assisted by the actions of its employees and agents, T-Mobile's failure to exercise reasonable care in supervising and controlling its employees and agents was a breach of its duty to its customers and to those potential victims, including Plaintiff.

68. It was foreseeable to T-Mobile that unauthorized persons would attempt to gain unauthorized access to T-Mobile customer data. T-Mobile failed to implement sufficient safeguards and procedures to prevent its employees and agents from granting such unauthorized access.

69. Upon information and belief, T-Mobile engaged in the acts alleged herein and permitted the conduct of its employees and agents. As a direct consequence of T-Mobile's negligent hiring, retention, control, and supervision of its employees and agents who allowed the unauthorized access to Plaintiff's account, Plaintiff was damaged in the amount of $412,000.

## Sixth Cause of Action
### (California Consumer Privacy Act)

70. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 to 69 as if fully set forth herein.

71. Plaintiff is a consumer and T-Mobile is a business that collects consumer information pursuant to Civil Code § 1798.100. T-Mobile must implement and maintain reasonable, appropriate security procedures and practices to protect personal information of consumers.

72. Plaintiff is a consumer whose personal information was subjected to an unauthorized access and exfiltration, theft, and disclosure as a result of T-Mobile's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information.

73. Plaintiff is entitled to his actual damages pursuant to Civil Code § 1798.150. Plaintiff has been damaged in the amount of $412,000.

## Prayer For Relief

WHEREFORE, Plaintiff BANG HUYNH respectfully prays that this Court grant the following relief:

For compensatory damages, in an amount according to proof at the time of trial.

For special damages, in an amount according to proof at the time of trial.

For general damages, in an amount according to proof at the time of trial.

For reasonable attorney's fees to the extent permitted by law.

For costs of suit incurred herein.

For prejudgment interest to the extent permitted by law.

For such other and further relief as this Court deems just and proper.

DATED: March 8, 2022            **KERSTEN & ASSOCIATES**


By:  /s/ William C. Kersten
     WILLIAM C. KERSTEN
     Attorney for Plaintiff BANG HUYNH

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a jury trial of any issues if this action is so triable.

DATED: March 8, 2022            **KERSTEN & ASSOCIATES**


By:  /s/ William C. Kersten
     WILLIAM C. KERSTEN
     Attorney for Plaintiff BANG HUYNH